Mary L. COOK, Plaintiff-Appellant,

v.

Margaret M. HECKLER, Secretary of Health and Human Services, Defendant-Appellee.

No. 84–4555
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Jan. 11, 1985.

Laurel G. Weir, Thomas L. Booker, Philadelphia, Miss., for plaintiff-appellant.

George Phillips, U.S. Atty., Daniel E. Lynn, Jackson, Miss., for defendant-appellee.

Before RUBIN, RANDALL, and TATE, Circuit Judges.

TATE, Circuit Judge:

The claimant, Mrs. Mary S. Cook, appeals from a judgment of the district court that, upon her petition for judicial review, affirms the Secretary's denial of disability insurance benefits under the Social Security Act. After hearing, the Administrative Law Judge (ALJ), subsequently upheld by the Secretary's Appeals Council, found that, although Mrs. Cook suffers from various impairments, she nevertheless retained the residual function to perform her relevant past work as a nurse's aide and patient sitter. 20 C.F.R. § 404.1520(e).

We reverse and remand to the Secretary, because (as contended by the claimant) we find that the ALJ, in discounting Mrs. Cook's testimony of disabling pain as *in*consistent with the weight of the medical testimony, overlooked that the uncontroverted medical evidence of her *present* condition tends instead to corroborate her present complaints of disabling back pain.

## I.

In reviewing the decision of the Secretary, the court of appeals is limited to determining whether there was substantial evidence in the record as a whole to support the decision that the claimant is not under a "disability" as defined by the Social Security Act. 42 U.S.C. § 405(g); *Jones v. Heckler*, 702 F.2d 616, 620 (5th Cir.1983). *See Green v. Schweiker*, 694 F.2d 108, 110 (5th Cir.1982), *cert. denied*, 460 U.S. 1091, 103 S.Ct. 1790, 76 L.Ed.2d 357 (1983). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Jones v. Heckler, supra*, 702 F.2d at 620; *Green v. Schweiker, supra*, 694 F.2d at 110. This court may not, however, reweigh the evidence or substitute its judgment for that of the administrative fact finder. *Jones v. Heckler, supra*, 702 F.2d at 620; *Green v. Schweiker, supra*, 694 F.2d at 110. If substantial evidence

supports the administrative finding, we may then only review whether the administrative law judge applied the proper legal standards and conducted the proceedings in conformity with the applicable statutes and regulations. *Hernandez v. Heckler*, 704 F.2d 857, 859 (5th Cir.1983); *Bormey v. Schweiker*, 695 F.2d 164, 168 (5th Cir.1983), *cert. denied*, —— U.S. ——, 103 S.Ct. 3091, 77 L.Ed.2d 1351 (1983).

However,

> This standard of review is not a rubber stamp for the Secretary's decision and involves more than a search for evidence supporting the Secretary's findings. We must scrutinize the record and take into account whatever fairly detracts from the substantiality of evidence supporting the Secretary's findings.

*Tome v. Schweiker*, 724 F.2d 711, 713 (8th Cir.1984). *See Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S.Ct. 456, 464, 95 L.Ed. 456 (1951), *Martin v. Heckler*, 748 F.2d 1027, 1031 (5th Cir.1984).

 Although there is no doubt that Mrs. Cook suffers from some pain and discomfort, she is not entitled to benefits unless she is "disabled" as that term is defined by the Social Security Act, 42 U.S.C. §§ 423(d)(1)(A). *See also Heckler v. Campbell*, 461 U.S. 458, 459–61, 103 S.Ct. 1952, 1953–54, 76 L.Ed.2d 66 (1983). Disability is defined as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A). The exist-ence of such disability must be demonstrated by medically acceptable clinical and laboratory diagnostic findings, and the overall burden of proof rests upon the claimant. 42 U.S.C. §§ 423(d)(3), (d)(5); *Jones v. Heckler, supra*, 702 F.2d at 620.

## II.

At the hearing before the ALJ, Mrs. Cook was represented by counsel. She testified, corroborated by her husband, of disabling pain due to a back and knee condition that prevented her from doing health-care work, such as making up a bed or lifting patients, as well as to extreme nervousness, dizzy spells and blackouts, allegedly resulting from the medication taken for her back pain and to control her diabetic condition. She testified that she could not bend over or lift anything, and that she could not because of pain get up from bed or dress without her husband's help.

However, based upon his evaluation of the medical evidence, as well as upon Mrs. Cook's demeanor and appearance during the administrative hearing, the ALJ specifically found to be non-credible Mrs. Cook's subjective complaints of disabling pain.[1] Under the ALJ's evaluation of the medical evidence, the arthritic condition of the knees was not severe, the diabetic condition was controlled and non-disabling, assorted other complaints were not medically substantiated as serious in nature, and the back pain she undoubtedly suffered was of a non-disabling nature stemming from a moderately degenerative arthritic condition—and none of her complaints, singly or

---

1. Somewhat surprising is the ALJ's easy discount of the credibility of Mrs. Cook's complaints of pain through his evaluation of her demeanor at the hearing. During the hearing, the ALJ himself noticed some physical symptoms, which Mrs. Cook ascribed as due to her pain. *See* the colloquoy at Tr. 38:

 Q. OK. Now I noticed that you've gotten kinda flushed looking, kinda red in the face. What causes that? Is that
 A. Blood pressure. Sometimes I have to go in and take a blood pressure tablet at noontime.
 Q. You've got your hand over your mouth. Please don't.
 A. I'm sorry. I apologize.
 Q. OK.
 A. The reason I'm flushed cause I'm hurting right now for one thing.
 Q. Where are you hurting?
 A. All in here and all
 Q. In your shoulder and your back?
 A. Across here, in my back.
 Q. The low back too?
 A. Yes.

in combination, were medically shown to be disabling. The ALJ concluded that, as evaluated in probability and weight by him, "the overwhelming weight of the [medical] evidence unequivocally demonstrates that the claimant's multiple complaints are not supported by abnormal findings on the basis of clinical tests and laboratory diagnostic techniques.

■ As to all except Mrs. Cook's back complaints, the great preponderance of the medical showing supports the ALJ's conclusions of the non-disabling nature of the various ailments complained.

■ As to the back complaints, however, we find that substantial evidence does not support the ALJ's finding. We find that the uncontroverted medical evidence as to the *present* condition of Mrs. Cook's back, as corroborated by x-ray findings is *not* inconsistent with her complaints of pain but, instead, is corroborative of such complaints.

Before we refer to this current medical evidence, in fairness we must state that a basis existed for the ALJ's skepticism of Mrs. Cook's present complaints. She had filed prior claims in at least 1980 and 1981 for disability based on neck and knee pain and upon her diabetic condition. The medical evidence submitted in connection with these claims, which is in the record, rather overwhelmingly negates disability for these causes. Further, Mrs. Cook's testimony at the hearing could properly be discounted as grossly exaggerating her present knee and diabetic troubles.

On the other hand, although difficulty in determination was complicated by these various earlier medical reports, the medical showing of the claimant's condition following October 18, 1982, is uncontroverted as to seemingly serious back troubles that would result in a painful back, especially upon exertion. Further, Mrs. Cook, born

February 18, 1928 (now 56 years of age), is a short (4'11") person now weighing 161 pounds, having reduced to this weight from 285 pounds in connection with treatment for her diabetes, and, from the medical records showing repeated hospitalizations for various ailment, she does not enjoy good general health.

With regard to Mrs. Cook's back condition, the medical evidence, as the ALJ saw it, was in dispute as to whether the cause of her complaints of back pain was a moderately degenerative arthritic condition or, instead, a degenerated disc in the lower back. Whatever the earlier diagnoses may have been as to Mrs. Cook's complaints stemming from moderate arthritis, by the time of the hearing the medical evidence demonstrates without substantial dispute a more serious back condition as the cause of these complaints.

The hearing was held on January 20, 1983. The report of Dr. Weems, an internal medicine specialist who examined the claimant on October 18, 1982 (three months before the hearing) on behalf of the Secretary, found that Mrs. Cook had "severe low back disease" which was "symptomatic", on the basis of his examination and of x-rays that showed "severe degeneration of the disc between L3 and L4 with severe sclerosis of the bone above and below this degenerated disc." In a report of November 16, 1982 (just two months before the hearing), Dr. French, an osteopathic general practitioner, reported that Mrs. Cook had been examined by him for multiple complaints, including back and shoulder pain, and that his impression was that she had "degenerative joint disease by history," that it would be advisable for her "to be hospitalized for a complete workup of her complaints," and that he would "see her back through the Clinic in approximately three months."[2]

2. This report is introduced in the record as document 34, R. 250–259, "Medical Report from Dr. French with Attached Clinical Notes dated November 16, 1982." The report of this date is found at R. 253. Two pages later there is an undated report by Dr. French, R. 255, which

found mild arthritis and that "x-rays of lumbosacral region of back and hips have been normal except for some early findings of osteophyte formation." The discrepancy between x-ray negative findings there indicated, and those found by other physicians examining her in late

Immediately following this report in the record is a report by Dr. Harman entitled, "Discharge Summary from Meridian Regional Hospital Covering an Admission [of Mrs. Cook] of 12/6/82 and Discharge of 12/13/82," a copy of which was sent to Dr. French, and which hospitalization was apparently pursuant to Dr. French's recommendation for a complete workup of her complaints. By his report of December 12, 1982 (six weeks before the hearing), Dr. Harman diagnosed Mrs. Cook's condition, after her admission for six days hospitalization, as "[d]egenerative arthritis lumbosacral spine with narrowing of disc space L3 and L4," based on her complaints and on x-rays of the lumbosacral spine revealing "narrowing of the intervertebral disc space L3, L4 with superimposed degenerative changes;" he stated that her "back pain ... responded to heat and rest," and that he had "advised her to continue rest for another week."

The other medical reports in the record are of earlier date in 1979, 1980, and 1981, and they arise from previously rejected claims by Mrs. Cook for disability benefits based on high blood pressure, diabetes, or neck pain. These reports (except for one, *see* note 2 *supra*) do not seem, in incidentally ascribing Mrs. Cook's complaints of back pain to a moderately degenerative arthritic condition, to have been based upon x-rays of the lower back.

The ALJ's evaluation of the medical evidence does not note that these three latest medical reports, the only ones made shortly before the hearing, *do* disclose an objective basis for Mrs. Cook's complaints of severe back pain. Nor are we able on the basis of the earlier medical evidence (taken mostly as to other complaints) to find any conflict in the medical evidence that would justify the ALJ in discounting them (the uncontradicted diagnoses of Mrs. Cook's *present* condition), however exaggerated her complaints may have been as to past or other claimed ailments. And, it is to be remem-

bered, the ALJ discounted Mrs. Cook's credibility chiefly because he felt her complaints of disabling pain were inconsistent with the weight of the medical testimony.

### III.

Pain alone can be disabling even if (unlike here) its existence is unsupported by objective evidence, if the pain is linked to a medically determinable impairment. *Scharlow v. Schweiker*, 655 F.2d 645, 648 (5th Cir.1981). While it may be within the discretion of an ALJ to determine the disabling nature of pain subjectively asserted by the claimant, at least where the medical evidence is inconclusive, *Jones v. Heckler*, 702 F.2d 616, 621–22 (5th Cir.1983), the ALJ's unfavorable credibility evaluation of a claimant's complaints of pain will not be upheld on judicial review where the uncontroverted medical evidence shows a basis for the claimant's complaints, *King v. Heckler*, 742 F.2d 968, 974–75 (6th Cir. 1984), *Spencer v. Schweiker*, 678 F.2d 42, 44–45 (5th Cir.1982), *see also Wilson v. Heckler*, 743 F.2d 218, 221 (4th Cir.1984), at least where the ALJ does not on an articulated basis weigh the objective medical evidence in assigning reasons for discrediting the claimant's subjective complaints of pain, *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir.1979). *See also Marshall v. Heckler*, 731 F.2d 555, 557 (8th Cir.1984).

The ALJ thus erred in overlooking that the uncontroverted recent medical testimony supports (rather than negates) the claimant's sworn testimony, corroborated by the testimony of her husband, of disabling back pain.

Accordingly, the judgment of the district court is REVERSED, with instructions to remand to the Secretary for further proceedings consistent with this opinion. The ALJ must consider the effect of the recent medical evidence discussed in this opinion and whether this tends to prove a permanently (rather than temporarily) disabling

---

1982, is apparently explained in that the undated report was made in connection with one of Mrs. Cook's earlier disability claims, following

her hospitalization in September, 1981, to which this undated report refers.

condition. He may, of course, take such further evidence as may be necessary.

REVERSED.